IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

KENNETH PARHAM,
*Defendant*.

CRIMINAL No. ELH-13-151

**MEMORANDUM OPINION**

In an Indictment filed on April 2, 2013 (ECF 1), defendant Kenneth Parham and twenty-four others were charged with racketeering conspiracy involving: (a) distribution of controlled substances; (b) possession with intent to distribute controlled substances; (c) money laundering; (d) retaliation against witnesses, victims, and informants; (e) bribery; and (f) extortion, in violation of 18 U.S.C. §§ 1962(d), 1963 (Count One). He was also charged with conspiracy to distribute and possess with intent to distribute a quantity of a mixture or substance containing controlled substances, in violation of 21 U.S.C. § 846 (Count Two), and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(I) (Count Three). An Order of Detention was entered for defendant on May 9, 2013. ECF 205. Ultimately, forty-four people were charged in the case. *See* ECF 418.[1]

---

[1] The case, which involved members of a gang known as the Black Guerilla Family, pretrial detainees, and correctional officers, made national news. *See, e.g.*, Lateef Mungin, *Baltimore Jail Officers Accused of Taking Bribes, Bringing Drugs to Gang Members*, CNN (Nov. 24, 2013), https://perma.cc/VWC6-D7H2**.**

Pursuant to a Plea Agreement (ECF 461), defendant entered a plea of guilty to Count One on October 12, 2013. The government agreed to recommend a sentence within the U.S. Sentencing Guidelines ("Guidelines" or "U.S.S.G."). *Id.* ¶ 9.

At sentencing on February 24, 2014 (ECF 716), the Court found that defendant qualified as a career offender, with a final offense level of 29, a criminal history category of VI, and Guidelines of 151 to 188 months of incarceration. *See* ECF 720 (Statement of Reasons). The Court sentenced defendant to 151 months of imprisonment, concurrent with a State sentence that Parham was then serving. ECF 719 (Judgment).

Defendant has moved for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF 2234, ECF 2235. Defendant claims that he should be released due to the death of the mother of his child. ECF 2234 at 1. In support of the motion, he also submitted one exhibit, a Shelter Care Order from the Juvenile Court of York County, Pennsylvania. *See* ECF 2235-1. In addition, defendant has moved to reduce his sentence pursuant to Amendment 821 to the Guidelines. ECF 2251. I shall refer to the motions collectively as the "Motion."

The government opposes the Motion. ECF 2241; ECF 2262. Parham has replied and he has submitted a prison record of his Individualized Needs Plan. ECF 2245; ECF 2245-1.

The Office of the Federal Public Defender has declined to represent defendant with regard to both motions. ECF 2237; ECF 2260. No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

## I. Factual and Procedural History

On April 2, 2013, a federal grand jury in the District of Maryland returned an Indictment charging twenty-five individuals, including Parham, with multiple offenses. ECF 1. Parham, a

member of the Black Guerilla Family gang ("BGF"), was charged in Count One with racketeering conspiracy to distribute controlled substances; to possess with intent to distribute controlled substances; to launder money; to retaliate against witnesses, victims and informants; to bribe; and to extort, in violation of 18 U.S.C. §§ 1962(d), 1963. ECF 1 at 7–8. Parham was also charged with conspiracy to distribute and possess with intent to distribute a quantity or mixture of substances containing oxycodone, buprenorphine, alprazolam, clonazepam, hydrocodone, methadone, and marijuana, in violation of 21 U.S.C. § 841(a) (Count Two). ECF 1 at 32–34. In Count Three, Parham was charged with conspiracy to money launder, in violation of 18 U.S.C. § 1956(a)(1)(B)(I). ECF 1 at 35–37.

As noted, pursuant to a Plea Agreement (ECF 461), defendant entered a plea of guilty to Count One on November 8, 2013. ECF 665. The offense carried a maximum term of imprisonment of twenty years. ECF 461, ¶ 3.

The Plea Agreement contains a stipulation of facts. ECF 461 at 4. The stipulation established that defendant was a member of the BGF gang. *Id.* From 2012 to 2013, when defendant was in pretrial custody at the Baltimore City Detention Center ("BCDC"), he was involved with, and often directed, the smuggling of contraband into BCDC, including cell phones, tobacco, and drugs,[2] assisted by Correctional Officers ("COs") who received payments, gifts, or a share of the profits. Defendant was a close associate of his co-defendant, Tavon White, and he knew many COs involved in contraband trafficking. Defendant and other BGF inmates frequently used people outside BCDC to obtain contraband, which was delivered to COs for smuggling.

---

[2] The drugs included marijuana, oxycodone, hydrocodone, buprenorphine, methodone, alprazolam, clonazepam, and others. ECF 461 at 4.

Parham helped conceal contraband from officials at BCDC, who would conduct periodic searches for contraband.

Defendant's criminal record is lengthy. The Presentence Report (ECF 630, "PSR") reflects convictions for numerous drug and assault offenses and robbery with a deadly weapon. *Id.* ¶¶ 24–42. These convictions date to 2001, when defendant was just eleven years old. *Id.* ¶ 25. Defendant had ten criminal history points, which equated to a criminal history category of V. *Id.* ¶ 44. However, the PSR determined that Parham qualified as a Career Offender, under U.S.S.G. § 4B1.1. *Id.* ¶ 44. This elevated his Criminal History category to VI. *Id.* ¶ 44.

According to the PSR, defendant had an offense level of 24. *Id.* ¶ 18. However, as a career offender, defendant's offense level was increased to 32. *Id.* ¶ 21. After deductions for acceptance of responsibility, defendant's final offense level was 29. *Id.* ¶¶ 22, 23.

With an offense level of 29 and a Criminal History Category of VI, defendant's advisory sentencing Guidelines called for a sentence ranging from 151 months to 188 months of imprisonment. *Id.* ¶ 53. As noted, at sentencing on February 24, 2014 (ECF 716), the Court imposed a sentence of 151 months of incarceration. ECF 719. Defendant was 24 years of age. ECF 630 at 1.

Parham previously moved for compassionate release in July 2020. ECF 2187. I denied that motion, without prejudice, because Parham did not indicate in his motion whether he exhausted his administrative remedies. ECF 2192 at 3.

Defendant, who is now 35 years of age, is currently incarcerated at USP Coleman II in Florida. *See Bureau of Prisons Inmate Locator*, https://www.bop.gov/inmateloc/ (search by BOP

Register Number 56445-037) (last accessed November 8, 2024).  He has a projected release date of January 27, 2025.  *See id.*

## II.  Legal Standard

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024); *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024); *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F. 4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions."  *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception is when the modification is "expressly permitted by statute."  *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.

A statutory exception is codified at 18 U.S.C. § 3582, which was first enacted as part of the Sentencing Reform Act of 1984.  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).  It is commonly termed the "'compassionate release exception.'"  *Moody*, 115 F.4th at 310; *see United States v. Osman*, 2024 WL 3633573, at *3 (4th Cir. Aug. 2, 2024) (stating that a motion under § 3582(c)(1)(A) is "commonly referred to as a motion for compassionate release . . . ."). Specifically, 18 U.S.C. § 3582(c)(1)(A)(i) authorizes a court to modify a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction."  *Hargrove*, 30 F.4th at 194.

As originally enacted, the compassionate release provision permitted a court to alter a sentence only upon motion made by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). This meant that a defendant seeking compassionate release had to rely on the BOP Director for relief. *See Bethea*, 54 F.4th at 831; *see*, *e.g*., *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866–67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, the BOP rarely filed such a motion on an inmate's behalf. As a result, compassionate release was an infrequent occurrence. *See Hr'g on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In 2018, with the passage of the First Step Act ("FSA"), *see* Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) (codified as 18 U.S.C. § 3582(c)(1)(A)), Congress "broadened" the authority of courts to grant sentencing modifications pursuant to 18 U.S.C. § 3582. *Malone*, 57 F.4th at 173. In particular, a federal inmate is now able to file a motion for compassionate release directly with the court, as long as the inmate first exhausts administrative remedies. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020). In particular, the FSA authorized a court to grant compassionate release "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. 18 U.S.C. § 3582(c)(1)(A)

(emphasis added); *see also Ferguson*, 55 F.4th at 268; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *McCoy*, 981 F.3d at 276.

However, under 18 U.S.C. § 3582(c)(1)(A), the court may modify the defendant's sentence only if two criteria are satisfied. *Brown*, 78 F.4th at 128; *Bethea*, 54 F.4th at 831. Specifically, "the district court must conduct a two-step analysis." *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024); *see also Bond*, 56 F.4th at 383.

The first step actually consists of two parts. The court "must determine: 1) whether extraordinary and compelling reasons warrant . . . a [sentence] reduction; and 2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *see Moody*, 115 F.4th at 310; *Davis*, 99 F.4th at 653; *Bond*, 56 F.4th at 383; *Bethea*, 54 F.4th at 831; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), *cert. denied*, 142 S. Ct. 383 (2021).

If that first step is met, the court then proceeds to the second step. Under the second step, the court must determine whether release is appropriate in light of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent those factors are applicable." *Bethea*, 54 F.4th at 831; *see Moody*, 115 F.4th at 310; *Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194; *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647; *Kibble*, 992 F.3d at 330. "Importantly, a court assessing a compassionate release motion is entitled to consider the § 3553(a) factors '[o]nly after' conducting the first step's analysis." *Osman*, 2024 WL 3633573, at *4 (citations omitted) (alteration in *Osman*); *see Malone*, 57 F.4th at 173 (stating that the district court may consider the § 3553(a) sentencing factors only after determining that extraordinary and compelling reasons warrant a sentence reduction and that a reduction is

consistent with the Sentencing Commission's policy statements).

Generally, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis." *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647. Notably, "it weighs against an abuse of discretion—and is viewed as 'significant'—when the same judge who sentenced the defendant rules on the compassionate release motion." *Bethea*, 54 F.4th at 834; *see United States v. Gutierrez*, 2023 WL 245001, at *5 (4th Cir. Jan. 18, 2023); *Hargrove*, 30 F.4th at 200; *High*, 997 F.3d at 189.

As the Fourth Circuit has recognized, "when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see Davis*, 99 F.4th at 653–54. The Policy Statement codified at U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy Statement"). "[U]ntil recently," that Policy Statement did not apply to motions filed by prisoners. *Davis*, 99 F.4th at 654; *see McCoy*, 781 F.3d at 281. The Policy Statement began: "Upon motion *of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2021) (emphasis added). Interpreting this language, the Fourth Circuit said in *McCoy*, 981 F.3d at 281, that, "[b]y its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." Therefore, on the basis of that earlier text, the Court held: "When a defendant exercises his . . . right to move for compassionate release on his own behalf, . . . § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *Id.* (citation omitted). As a result, district courts were

"empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (citation omitted).

Effective November 1, 2023, U.S.S.G. § 1B1.13 was amended. *See Davis*, 99 F.4th at 654 (citing 88 Fed. Reg. 28254 (May 3, 2023)). The Policy Statement now begins: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2023) (emphasis added). Therefore, the Policy Statement is now applicable to defendant-filed motions under § 3582(c)(1)(A). *Davis*, 99 F.4th at 658 (directing district court on remand "to revisit [the petitioner's] arguments in light of the Sentencing Commission's new policy statement outlining when and how to consider changes in law as an extraordinary and compelling reason for a reduction"). As a result, when a defendant files a motion for compassionate release, a court must ensure that any sentence reduction "is consistent with" the Policy Statement's provisions. 18 U.S.C. § 3582(c)(1)(A).

The Policy Statement provides, in part, U.S.S.G. § 1B1.13(a):

(B) IN GENERAL.—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1) (A) extraordinary and compelling reasons warrant the reduction; or

(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

Section 1B1.13(b) of the Policy Statement is titled "EXTRAORDINARY AND COMPELLING REASONS." It identifies multiple circumstances that, individually or in combination, may provide "extraordinary and compelling reasons" for a reduction in sentence. *See* § 1B1.13(b)(1)–(6). These include certain medical circumstances of the defendant, such as a terminal illness, "serious cognitive impairment," a medical condition that requires "specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death"; or the defendant is at imminent risk of being affected by "an ongoing outbreak of infectious disease" or "an ongoing public health emergency . . . .", § 1B1.13(b)(1)(A), (B), (C), (D); the defendant's age, along with other factors, § 1B1.13(b)(2); the defendant's family circumstances, § 1B1.13(b)(3)(A), (B), (C), (D); the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, § 1B1.13(b)(4)(A), (B); for a defendant who received an "unusually long sentence" and has served at least 10 years of the sentence, a non-retroactive change in the law that "produce[s] a gross disparity" in relation to "the sentence likely to be imposed at the time the motion is filed . . . .", § 1B1.13(b)(6); and "any other circumstance or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)." § 1B1.13(b)(5).

This case implicates defendant's family circumstances. Therefore, I shall discuss § 1B1.13(b)(3), *infra*.

Section 1B1.13(c) of the Policy Statement is titled "LIMITATION ON CHANGES IN LAW." It specifies that, "[e]xcept as provided in subsection (b)(6)," which concerns an "unusually long sentence," "a change in the law (including an amendment to the Guidelines Manual that has not

been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. § 1B1.13(c). "However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under [the Policy Statement], a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.*; *see Davis*, 99 F.4th at 654.[3]

Under § 3582(c)(2), a defendant may be eligible for relief if an amendment to the Guidelines has been made retroactively applicable. *United States v. Riley*, ELH-13- 0608, 2022 WL 9361679, at *5 (D. Md. Oct. 14, 2022) (citing *Dillon v. United States*, 560 U.S. 817, 826 (2010)). One such retroactive amendment is Amendment 821 to the Sentencing Guidelines, which went into effect on November 1, 2023. Amendment 821, U.S. SENT'G COMM'N, https://www.ussc.gov/guidelines/amendment/821.

Section 1B1.13(d) of the Policy Statement concerns rehabilitation of the defendant. It limits the weight a court may assign to a defendant's rehabilitation while serving a sentence. That section provides that, "[p]ursuant to 28 U.S.C. §994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G.

---

[3] In *Concepcion v. United States*, 597 U.S. 481 (2022), the Supreme Court concluded that a district court's general obligation "to consider [all] nonfrivolous arguments presented by the parties," *id.* at 487, required it "to consider intervening changes of law or fact in exercising [its] discretion to reduce a sentence pursuant to the First Step Act." *Id.* at 500. However, the Court acknowledged that "Congress or the Constitution [may] limit[] the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence . . . ." *Id.* at 486. "Thus," the Court noted, "Congress expressly cabined district courts' discretion [to reduce a sentence] by requiring courts to abide by the Sentencing Commission's policy statements." *Id.* at 495. It follows that, because the Policy Statement is now applicable to prisoner-filed motions for compassionate release, a court may consider intervening changes of law only in the manner that the Policy Statement prescribes.

§ 1B1.13(d).  "However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."  *Id.*  And, § 1B1.13(e) provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction.

Amendment 821, which is the subject of the motion docketed at ECF 2251, "is a multi-part amendment."  *United States v. Gary*, JKB-08-086, 2024 WL 1641007, at *1 (D. Md. Apr. 16, 2024).  Part A pertains to criminal history and "status points."  *Id.*  Criminal history points determine a defendant's criminal history category.  Under Amendment 821, if a defendant has seven or more criminal history points, and he committed the instant offense while under any criminal justice sentence, such as parole, probation, or supervised release, one point is added.  U.S.S.G. § 4A1.1(e).  Prior to the amendment, a defendant under supervision was subject to a two-point increase.  Notably, the amendment eliminated any status points for a defendant on supervision but who "has six or fewer criminal history points."  *Id.*; *see also United States v. Law*, DKC-11-489, 2024 WL 3757902, at *1 (D. Md. Aug. 12, 2024) ("Part A . . . eliminated status points altogether for a defendant with six or fewer criminal history points.").

Part B provides for a deduction of two offense levels if ten conditions are met, U.S.S.G. 4C1.1(a):

(1) the defendant did not receive any criminal history points from Chapter Four, Part A;
(2) the defendant did not receive an adjustment under § 3A1.4 (Terrorism);
(3) the defendant did not use violence or credible threats of violence in connection with the offense;
(4) the offense did not result in death or serious bodily injury;
(5) the instant offense of conviction is not a sex offense;
(6) the defendant did not personally cause substantial financial hardship;

(7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8) the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);

(9) the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and

(10) the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. 848[.]

Even if a defendant prisoner establishes that extraordinary and compelling reasons warrant relief, a reduced sentence does not necessarily follow. The court must then consider the sentencing factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *See Dillon*, 560 U.S. at 826–27; *Brown*, 78 F.4th at 128; *Mangarella*, 57 F.4th at 200, 203; *Malone*, 57 F.4th at 174; *Bethea*, 54 F.4th at 833; *Hargrove*, 30 F.4th at 195; *High*, 997 F.3d at 186; *Martin*, 916 F.3d at 397; *see Kibble*, 992 F.3d at 329–30 (noting that district court must consider § 3553(a) factors when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d at 693–94 (district court must give due consideration to the § 3553(a) factors); *see also United States v. Jones*, 2022 WL 2303960, at *1 (4th Cir. June 27, 2022) (per curiam) (noting that "a court need not explicitly make findings on extraordinary and compelling reasons where consideration of the § 3553(a) factors counsels against release"); *United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam) (noting that, even if the district court finds extraordinary and

compelling circumstances, it must consider the § 3553(a) factors to the extent applicable in exercising its discretion). Notably, the amendments to the Guidelines in November 2023 did not alter this requirement.

The § 3553(a) "factors include 'the nature and circumstances of the offense'; 'the history and characteristics of the defendant'; and the need for the sentence to 'provide just punishment,' 'afford adequate deterrence,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with . . . training, medical care, or other correctional treatment.'" *Jenkins*, 22 F.4th at 170 (quoting 18 U.S.C. § 3553(a)). As the Fourth Circuit has observed, "'many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'" *Bond*, 56 F.4th at 384 (quoting *Jackson*, 952 at 500). The district courts "enjoy the discretion to give additional weight to any one factor so long as they do not confine their analysis to that factor." *Davis*, 99 F.4th at 656; *see United States v. Friend*, 2 F.4th 369, 381–82 (4th Cir. 2021). And, in weighing the § 3553(a) factors, the court may consider the terms of a plea bargain. *Bond*, 56 F.4th at 384–85.

In *Davis*, 99 F.4th at 659, the Fourth Circuit said: "District courts are not required to acknowledge and address each of the defendant's arguments on the record when conducting a § 3553(a) analysis." But, "'the record as a whole'" must demonstrate that the judge considered the parties' contentions and had "'a reasoned basis'" for the exercise of judicial discretion. *Malone*, 57 F.4th at 176 (citations omitted); *see also Davis*, 99 F.4th at 659; *United States v. Puzey*, 2023 WL 2985127, at *2 (4th Cir. Apr. 18, 2023) (per curiam).

In particular, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190).

And, a district court abuses its discretion when it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors constraining its exercise of discretion," "relie[s] on erroneous factual or legal premises," or "commit[s] an error of law." *High*, 997 F.3d at 187 (internal quotation marks omitted); *see Jenkins*, 22 F.4th at 167; *see also Brown*, 78 F.4th at 132 (criticizing district judge's "cursory" consideration of the § 3553(a) factors); *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018).

"How much explanation is 'enough' depends on the complexity of a given case." *Gutierrez*, 2023 WL 245001, at *3; *see United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021). For example, "when a defendant 'present[s] a significant amount of post-sentencing mitigation evidence, . . . a more robust and detailed explanation [is] required.'" *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190) (alterations in *Cohen*). In any event, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190). And, a more detailed explanation may be required if a substantial change in the law creates a disparity between the sentence a defendant actually received and the sentence he would receive, if sentenced under current law. *See Davis*, 99 F.4th at 661; *see* 18 U.S.C. § 3553(a)(6) (directing a court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."); *see Moody*, 115 F.4th at 310 (recognizing that a defendant may not "challenge the validity of a sentence in a compassionate release" motion but explaining that a court may consider whether a defendant's sentence would be shorter "because of changes in law."). In explaining its compassionate release ruling, "a district court is permitted to add to its original,

sentencing-phase consideration of the § 3553(a) factors . . . . " *Bethea*, 54 F.4th at 834; *see Kibble*, 992 F.3d at 332.

*Davis*, 99 F.4th 647, is informative. The *Davis* Court recognized that a change in the Guidelines or the law can produce a sentencing disparity under § 3553(a)(6). *Id.* at 654–55. And, the Court observed that changes in the law since the defendant's sentencing "would [have] lower[ed] [the defendant's] guidelines range from a 188–235 months range to [a] 92–115 months range." *Id.* at 661. According to the Court, if the defendant were sentenced under current Guidelines, "it is very likely that [defendant] would already be out of prison." *Id.* The Court stated, *id.*: "That reality alone implicates one of the applicable sentencing factors: 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id.* (quoting 18 U.S.C. § 3553(a)(6)). The Court concluded that the district court was obligated to provide a "detailed explanation" of its § 3553(a) analysis, because "[t]his sentence disparity is so stark, and the change in law so substantial." *Davis*, 99 F.4th at 661 (*citing Chavez-Meza v. United States*, 585 U.S. 109, 119 (2018)).

### III. Discussion

### A. Exhaustion

Parham states that he wrote to the Warden of his institution regarding compassionate release to no avail and has heard nothing back. ECF 2234 at 1; ECF 2235. The government does not dispute that Parham has exhausted his administrative remedies. *See* ECF 2241. Given the time that has passed since defendant filed the Motion, I shall assume that Parham has met the administrative exhaustion requirement. *See* 18 U.S.C. § 3582(c)(1)(A).

### B. Family Circumstances

Defendant has moved for his immediate release because the mother of his daughter has died from a fentanyl overdose.  ECF 2234 at 1.  Defendant has submitted a Shelter Care Order from the Juvenile Court of York County, Pennsylvania, dated October 31, 2022, concerning minor child A.P. as an exhibit to his Motion.  ECF 2235-1 (the "Shelter Care Order").[4]  Defendant claims, and the Shelter Care Order shows, that the child's mother is deceased and A.P. has been placed in a foster home.  ECF 2235-1 at 2.  The Shelter Care Order also shows that A.P.'s date of birth is June 23, 2007.  ECF 2235-1 at 1.  Therefore, she is now 17 years old.

The Shelter Care Order indicates that Parham did not attend the hearing[5] and, curiously, that his whereabouts are unknown.  *Id*. at 2.  Further, it states that A.P. has not seen her father in about ten years.  *Id.* at 1.

Parham's PSR (ECF 630) states that defendant has one son, who was one year old at the time, and resided with his mother in East Baltimore, Maryland.  *Id.* ¶ 66.  Further, it states that, according to defendant's mother, Parham also has a daughter who was six years old at the time, but her whereabouts were unknown to the family.  *Id*. ¶ 67.

U.S.S.G. § 1B1.13(b)(3) states (emphasis added):

(3) Family Circumstances of the Defendant.--

> (A) *The death or incapacitation of the caregiver of the defendant's minor child* or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

---

[4] For privacy reasons, I have identified the child only by initials.

[5] Defendant asserts that the prison did not allow the video visit but adds no further details. ECF 2235 at 1.  I assume that defendant was not allowed to appear by video.

      (B) The incapacitation of the defendant's spouse or registered partner when *the defendant would be the only available caregiver for the spouse or registered partner*.

      (C) The incapacitation of the defendant's parent when *the defendant would be the only available caregiver for the parent*.

      (D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when *the defendant would be the only available caregiver for such family member or individual*. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

According to defendant, following the death of A.P.'s mother, defendant's daughter was placed in foster care in York, Pennsylvania on August 7, 2022. ECF 2235 at 1. He seeks a sentence reduction so he can "take care of [his] daughter and get custody of her." *Id.*

The government highlights that A.P. has not seen her father in about ten years. *See* ECF 2241 at 3. It argues that "the defendant has failed to demonstrate any legally sufficient 'extraordinary and compelling' reason for release," ECF 2241 at 3. Moreover, the government asserts, *id.* at 4: "While [Parham] did provide some documentation that the child's mother died, . . . there is no factual basis proffered that he is the only available caregiver for the daughter. . . . A defendant fails to meet his burden on this ground when he fails to provide sufficient documentation regarding his claim to be the sole available caregiver to a family member."

As noted, the Guidelines were amended in November 2023. Of relevance, U.S.S.G. § 1B1.13(b)(3) was modified by Amendment 814. As the United States Sentencing Commission explains:

      First, this modification expands the existing provision relating to the death or incapacitation of the caregiver of a defendant's minor child to include a child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition. Second, the modification adds a new

> provision for cases in which a defendant's parent is incapacitated. Finally, the modification adds a second new provision that applies when similar circumstances exist with respect to a person whose relationship with the defendant is similar in kind to that of an immediate family member.

United States Sentencing Commission, *2023 Amendments in Brief*, at 2, https://perma.cc/6MGU-7SZQ.

Under the Guidelines, a defendant can establish an "extraordinary and compelling" circumstance based on the "*death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.*" U.S.S.G. § 1B1.13(b)(3)(A) (emphasis added). The plain language of the Guidelines does not require a defendant to demonstrate that there are no other available caregivers for a minor child. *Cf. United States v. Mitchell*, 2024 WL 4702281, at *6 (4th Cir. Nov. 7, 2024) (stating that if a Guideline "is not genuinely ambiguous" the court does not look to the commentary. But, the court need not ignore the commentary.).

Prior to November 2023, when addressing motions for compassionate release based on similar circumstances, most courts considered whether there were alternative caregivers. *See, e.g.*, *United States v. Mathews*, No. 2:19-CR-41, 2023 WL 5924411, at *3 (S.D. Ohio Sept. 12, 2023), *reconsideration denied*, No. 2:19-CR-41, 2024 WL 495539 (S.D. Ohio Feb. 8, 2024); *United States v. Lemon*, No. 4:16-cr-0239, 2021 WL 1060142, at *2 (N.D. Ohio Mar. 18, 2021); *United States v. Cole*, No. CR 18-20237, 2021 WL 194194, at *2 (E.D. Mich. Jan. 20, 2021); *United States v. Simmons*, No. CR 15-0025 (PLF), 2021 WL 5074741, at *5 (D.D.C. Nov. 2, 2021) (citing cases); *United States v. Pearson*, No. CR 16-20601, 2020 WL 7706618, at *4 (E.D. Mich. Dec. 29, 2020); *United States v. Delgado*, No. 3:15-CR-246, 2023 WL 4552890, at *2 (M.D. Pa. July

14, 2023); *United States v. Rivera*, No. CR 15-2990 RB, 2021 WL 6062828, at *2–3 (D.N.M. Dec. 22, 2021); *United States v. Cruz-Rivera*, No. CR 11-43, 2020 WL 5993352, at *7 (E.D. Pa. Oct. 9, 2020). Courts placed the burden on the defendant to prove that other caregivers were not available or suitable. *See, e.g.*, *Mathews*, 2023 WL 5924411, at *3; *Lemon*, 2021 WL 1060142, at *2; *Delgado*, 2023 WL 4552890, at *2; *Cruz-Rivera*, 2020 WL 5993352, at *7.

U.S.S.G. § 1B1.13(b)(3)(A) defines an "extraordinary and compelling" circumstance as the "*death or incapacitation of the caregiver of the defendant's minor child* or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition." (Emphasis added). No requirement is mentioned with respect to alternative caregivers. In contrast, all three of the other "extraordinary and compelling" family circumstances set forth in § 1B1.13.(b)(3) require the defendant to establish that there is no available caregiver.

The court must construe the words of the Guidelines in accordance with their ordinary meaning. *See United States v. Boler*, 115 F.4th 316, 323 (4th Cir. 2024); *United States v. Haas*, 986 F.3d 467, 480 (4th Cir. 2021). In my view, § 1B1.13(b)(3)(A) is not ambiguous. Employing canons of statutory interpretation and considering "the specific context in which the language is used, and the broader context," *Hurlburt v. Black*, 925 F.3d 154, 158 (4th Cir. 2019) (en banc), it is clear that the provision does not require defendant to be the sole possible caregiver. If the Sentencing Commission sought to limit section 1B1.13(b)(3)(A)'s applicability to circumstances where the defendant is the only available caregiver, it would have said so. I cannot import a requirement that the Sentencing Commission failed to include.

I am not aware of any Fourth Circuit case that has addressed this issue. But, several other courts have recognized that, as to the death of the caregiver of the defendant's minor child, the defendant need not establish that he is the only available caregiver. *See United States v. Lanphear*, No. CR 19-19-BLG-SPW, 2024 WL 97369, at *2 (D. Mont. Jan. 9, 2024) (stating that "because VanderRoest was the caregiver of [the defendant]'s minor child at the time of his death and *there is no requirement that the defendant be the child's only available caregiver*, VanderRoest's death qualifies as an extraordinary and compelling reason under § 1B1.13.") (emphasis added); *United States v. Lou*, No. 05 CR 514, 2023 WL 2499878, at *2 (N.D. Ill. Mar. 14, 2023) ("That analysis ignores the express terms of the provision. It is the death or incapacitation of the caregiver that is extraordinary and compelling, not only the threat of foster care."); *United States v. Turner*, No. 18-CR-142, 2020 WL 5717096, at *4 (E.D. Wis. Sept. 24, 2020) ("I see no requirement in the guideline or the statute that defendant also demonstrate that he is the only available care-giver for his daughter.").

A.P. is still a minor, although she is approaching eighteen years of age; she is defendant's child; and A.P.'s mother has died. In light of the death of the child's mother, defendant has established an extraordinary and compelling reason for compassionate release.

### C. Intervening Change in Law

Parham cites a change in the Guidelines that he claims removes a two-point status enhancement, and asks if he is eligible to have his sentence reduced on this basis. He notes that he was on state probation at the time of the offense that resulted in his conviction. *See* ECF 2251, ECF 2251-1.

The government maintains that "Parham is factually incorrect to suggest he received an enhancement under U.S.S.G. § 4A1.1. According to his presentence report, he did not receive any 'status points' under that provision." ECF 2262 at 1 (citing ECF 630 at ¶¶ 43–44).

Defendant's PSR (ECF 630) does not reflect that any status points were added because defendant was on supervision at the relevant time. *Id.* ¶ 43. Regardless, the status points would have been of no consequence because defendant was deemed a career offender. *Id.* ¶ 44. This elevated his criminal history category from V (ten points) to VI, without regard to status points. *Id.* ¶¶ 43, 44.

### D.  § 3553(a) Factors

Having concluded that defendant has established an extraordinary and compelling ground for compassionate release due to family circumstances, I next consider whether compassionate release would be consistent with the sentencing factors enumerated in 18 U.S.C. § 3553(a).

Defendant's crime is quite serious. Although defendant did not have a leadership role in the BGF organization, he trafficked contraband, including drugs, into a penal institution. As the government points out, his "criminal conduct involved not just drug trafficking, but also public corruption in that the organization used and paid bribes to correctional officers in exchange for special treatment." ECF 2241 at 7.

Of import, defendant's criminal history is lengthy and troubling. He was convicted of robbery with a deadly weapon when he was just eleven years old. *Id.* ¶ 25. He has been convicted of armed robbery and assault. *Id.* ¶ 36. He has also been convicted of various felony drug offenses. *Id.* ¶¶ 33, 38, 39.

The government points to Parham's PSR, which included "10 natural criminal history points for his prior convictions for: (1) fleeing and eluding (2007); (2) attempted possession with intent to distribute controlled substances (2008); (3) armed robbery and first degree assault (2008); (4) possession with intent to distribute controlled substances (2011); and (5) unlawful possession of a handgun (2011). ECF 630 (PSR) at 6-10." ECF 2262 at 7–8. The government maintains that Parham's "criminal history and continued involvement with BGF demonstrate a clear disregard for the law and the safety of others." *Id*. at 8.

In 2011, defendant was sentenced to five years of imprisonment for conspiracy to distribute CDS and possession with intent to distribute CDS. ECF 630, ¶ 38. That same day, defendant was also sentenced to ten years of imprisonment for firearm/drug trafficking crime, three years of imprisonment for handgun on person, and five years of imprisonment for illegal possession of a registered firearm. *Id.* ¶ 39. Defendant's prior sentences did not deter him from committing the instant offense.

Defendant also has a long history of substance abuse. He first began consuming vodka on a daily basis at the age of fifteen, and began smoking marijuana on a weekly basis since the age of fifteen. *Id.* ¶¶ 78, 79.

Where appropriate, the district court "must account not only for the circumstances at the time of the original offense but also for significant post-sentencing developments." *United States v. Mangarella*, 57 F.4th 200, 203 (4th Cir. 2023); *see Martin*, 916 F.3d at 397; *Kibble*, 992 F.3d at 334 n.3. Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture of [his] 'history and characteristics.'" *Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)). The court must "at least weigh

the [defendant's] conduct in the years since the initial sentencing." *McDonald*, 986 F.3d at 412; *see United States v. Martin,* 916 F.3d 389, 397 (4th Cir. 2019) (requiring an "individualized explanation" as to rehabilitative efforts). A defendant's behavior while in BOP custody is an important indicator of whether he remains a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A)(ii).

To be sure, rehabilitation efforts should be considered in regard to a motion for compassionate release. *See United States v. Lancaster*, 997 F.3d 171, 175 (4th Cir. 2021) ("And in considering the § 3553(a) factors, the court can take into account a defendant's conduct after his initial sentencing."); *McDonald*, 986 F.3d at 410–12 (noting that on a motion to reduce sentence under the First Step Act, the district court must consider defendant's post-sentencing conduct); *United States v. Randall*, 837 Fed. App'x 1008, 1009 (4th Cir. 2021) ("[A] district court must provide an individualized explanation for denying a sentence reduction motion under the First Step Act when the defendant presents evidence of his post-sentencing rehabilitation."); *United States v. Rudisill*, 834 Fed. App'x 827, 829 (4th Cir. 2021) (finding district judge abused his discretion in denying motion under the First Step Act without addressing defendant's post-sentencing conduct). However, rehabilitation alone does not warrant a defendant's immediate release. *United States v. Davis*, 2022 WL 127900, at *1 (4th Cir. Jan. 13, 2022).

Defendant's disciplinary record is disturbing and concerning. The government points out that while in prison, defendant "has committed numerous infractions resulting in disciplinary sanctions, including: (1) possessing drugs or alcohol (August 2018); (2) refusing to work and refusing to obey an order (January 2022); (3) refusing to work (January 2022); (4) refusing to work (January 2022); (5) possessing an unauthorized item (March 2022); (6) refusing to work (August

2022); (7) possessing an unauthorized metal object (October 2022); (8) destruction of property (October 2022); (9) refusing to work (January 2023); (10) refusing to work (February 2023); (11) disruptive conduct/being high (August 2023); (12) threatening bodily harm to another inmate (December 2023)." ECF 2262 at 3–4. The government also included defendant's chronological disciplinary record, confirming defendant was charged and disciplined for these infractions, as well as two others not referenced by the government. *See* ECF 2262-2.

Parham asserts that his infractions began upon his arrival at his current institution, but prior to this, he had not had an infraction in four years. ECF 2245 at 1. Defendant also maintains that he has since dropped out of the gang. *Id*. Moreover, defendant states that upon his release, he can live with his father, who has a room available for Parham and his daughter. *Id*. at 2. Defendant also states that his brother has a job available for him at his remodeling company. *Id*.

The fourteen infractions Parham incurred while incarcerated reflect poorly on his adjustment. *See* 18 U.S.C. § 3582(c)(1)(A)(ii) (A defendant's behavior while in BOP custody is an important indicator of whether he remains a danger to the community). In August 2018, Parham was disciplined for possessing drugs or alcohol. ECF 2262-2 at 4. He was disciplined three times in January 2022 for refusing to work. *Id*. at 3–4. He was disciplined for possessing unauthorized items in February 2022 and again in October 2022. *Id*. at 2–3. And, as recently as December 2023, defendant was disciplined for threatening bodily harm. *Id*. at 1. These infractions counsel against a finding that defendant has been rehabilitated.

It is also noteworthy that a reduction of defendant's sentence to time served would not promote respect for the law. Again, defendant's offense was extremely serious, his criminal history is lengthy and disturbing, and he has incurred multiple infractions during his incarceration.

### IV.  Conclusion

I conclude that the factors under 18 U.S.C. § 3553(a) do not weigh in favor of reducing defendant's sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  Moreover, Amendment 821 is not applicable, based on the facts.  Therefore, I shall deny the Motion.

An Order follows, consistent with this Memorandum Opinion.

Date: November 12, 2024                        _____/s/_____

Ellen Lipton Hollander
United States District Judge